State of **SOUTH DAKOTA**,
Plaintiff,

v.

John A. **VOLPE**, Secretary of the Department of Transportation, United States of America, Washington, D. C., Defendant.

Civ. No. 72-4024.

United States District Court,
D. South Dakota, S. D.
Jan. 23, 1973.

336

Lyle J. Wirt and Michael F. Pieplow, Sp. Asst. Attys. Gen., Sioux Falls, S. D., for plaintiff.

William F. Clayton, U. S. Dist. Atty., District of S. D., R. D. Hurd, Asst. U. S. Atty., Sioux Falls, S. D., Peter J. P. Brickfield, Dept. of Justice, Washington, D. C., and Gregory Wolfe, Dept. of Transportation, Washington, D. C., for defendant.

Ronald G. Schmidt, Pierre, S. D., appeared amicus curiae.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

In this action the State of South Dakota (hereinafter "the State") seeks, *inter alia,* an order from this court directing the Secretary of the Department of Transportation (hereinafter "the Secretary") to pay to South Dakota the withheld portion of the Federal-Aid Highway Funds for fiscal year 1973 in the amount of $3,361,546.60. This sum represents a ten per cent reduction assessed for failure to comply with the Highway Beautification Act of 1965 (hereinafter "the Act"), 23 U.S.C.A. Sec. 131, as authorized by subsection (b) of that Act. Jurisdiction is based upon 28 U.S.C.A. Sec. 1331, the matter in controversy exceeding the sum or value of ten thousand dollars, exclusive of interest and costs, and arises under the Constitution and laws of the United States; and under 23 U.S.C.A. Sec. 131(*l*).

The defendant, John A. Volpe, Secretary of the Department of Transportation, has moved for summary judgment in this appeal, from his administrative decision, initiated by the State.

### Facts and Procedural Background

Congress, in 1965, passed the Highway Beautification Act. Pub.L. No. 89–285, 79 Stat. 1028 (codified at 23 U.S.C.A. Sec. 131). This Act regulates outdoor advertising adjacent to the Interstate and primary highway systems by limiting, with few exceptions[1], signs, displays and devices to directional and other official signs and notices. 23 U.S.C.A. Sec. 131(c). As declared by the Act, the Congressional purpose is for "effective control" of outdoor advertising signs, displays and devices "in order to protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty." 23 U.S.C.A. Sec. 131(a). A prerequisite for funding under the Act is state legislation providing "for effective control of the erection and maintenance along the Interstate System and the primary system of outdoor advertising signs, displays, and devices which are within six hundred and sixty feet of the nearest edge of the right-of-way and visible from the main traveled way of the system, . . ." 23 U.S.C.A. Sec. 131(b). An additional requirement is that each state and the Secretary enter into an agreement relative to size, lighting and spacing, consistent with customary use, in regard to the outdoor advertising signs, displays, and devices. 23 U.S.C.A. Sec. 131(d).

As a means of insuring that the individual states would actively participate with the Secretary of the Department of Transportation in the program, Congress provided for a ten per cent reduction in a state's apportionment should the Secretary determine that a state had not provided "effective control" of outdoor advertising along the federal-aid highway systems. 23 U.S.C.A. Sec. 131(b). The 1965 Act provides that "just compensation" shall be paid for the removal of existing signs, 23 U.S.C.A. Sec. 131(g), but due to Congress' failure to appropriate its share of the

---

1. One such exception is provided in subsection (d) of the Act, which states:

   (d) In order to promote the reasonable, orderly and effective display of outdoor advertising while remaining consistent with the purposes of this section, signs, displays, and devices whose size, lighting and spacing, consistent with customary use is to be determined by agreement between the several States and the Secretary, may be erected and maintained within six hundred and sixty feet of the nearest edge of the right-of-way within areas adjacent to the Interstate and primary systems which are zoned industrial or commercial under authority of State law, or in unzoned commercial or industrial areas as may be determined by agreement between the several States and the Secretary. The States shall have full authority under their own zoning laws to zone areas for commercial or industrial purposes, and the actions of the States in this regard will be accepted for the purposes of this Act. Nothing in this subsection shall apply to signs, displays, and devices referred to in clauses (2) and (3) of subsection (c) of this section.

funds enabling the Department of Transportation to participate in this compensation the penalty provision was deferred until 1971.

In a letter to the Governor of South Dakota, dated February 4, 1971, the Secretary served notice that the moratorium on the imposition of the ten per cent penalty had been lifted and active enforcement of the Act initiated. In compliance with the Act's established procedures, 23 U.S.C.A. Sec. 131(*l*), the Secretary duly apprised South Dakota of his determination that South Dakota had not provided "effective control". On May 18, 1971, the Secretary informed the South Dakota Governor of his proposed determination to withhold ten per cent of the State's fiscal 1973 apportionment.

In Washington, D. C., on September 23, 1971, South Dakota was afforded a formal evidentiary hearing pursuant to the Administrative Procedure Act, 5 U.S.C.A. Secs. 554, 556, and 557, in regard to the Secretary's proposed determination. South Dakota chose not to present any evidence at this statutory hearing, relying upon its argument coupled with its brief to adequately present its position. Subsequently, the Hearing Examiner made his Recommended Decision to the Secretary on December 9, 1971. The Secretary's Final Determination, March 1, 1972, followed the Hearing Examiner's Recommended Decision, which was accompanied by exceptions filed only by the State, formally finding South Dakota ineffectively controlling outdoor advertising. The Secretary exercised his discretion in the "public interest" and delayed the penalty imposition until March 31, 1972, subject to his stated terms. 23 U.S.C.A. Sec. 131(b). According to the Secretary's terms if the State had in effect on March 31, 1972, an acceptable statute effectively controlling outdoor advertising, and had entered into a size, lighting and spacing agreement with the Federal Highway Administrator, all monies withheld would be released. It is the Secretary's

position that South Dakota did not conform to the terms of that extension.

The center of disagreement between the Secretary and the State revolves around two title provisions of the South Dakota Compiled Laws. The Secretary concedes that Title 11, Planning and Zoning, provides comprehensive zoning in the traditional sense, but that it has not been implemented, remaining in the proposal stage at the local county level. The vehicle through which the State has sought to qualify for federal funding under the Act is Title 31, Chapter 29, Highway Beautification and Regulation of Advertising, specifically enacted to comply with the Highway Beautification Act of 1965. SDCL 1967, Sec. 31–29–17. Of later significance is the South Dakota Legislature's 1972 amendment to Chapter 31–29 by House Bill 570, Ch. 171, 1972 S.D. Session Laws, modifying its zoning, size and lighting provisions effective July 1, 1972. It is the State's attempt to satisfy the Act's requirement of effectively controlling outdoor advertising pursuant to the above legislation that gives rise to this litigation.

The Secretary's decision finding South Dakota not in compliance with the Act addressed itself to the State's four exceptions to the Hearing Examiner's Recommended Decision. In the State's appeal to this court the defendant-Secretary has moved for summary judgment on the grounds that there is no genuine issue as to any material fact and is entitled to judgment as a matter of law. The State of South Dakota contends that the Secretary's determination is arbitrary and unreasonable and should, therefore, be set aside. Two main points in support of its prayer for such action are presented in the State's brief. Correspondingly, this opinion will discuss them *seriatim*.

I. *Judicial Review of the Secretary's Decision.*

■ It is a well recognized rule of law that judicial review of an administrative decision is limited in scope.

Such a review is confined to a review of the record made at the administrative level. 2 Am.Jur.2d Administrative Law Sec. 612 (1962).

> The reviewing court must first determine whether the agency acted within the scope of its authority, and next whether the decision reached was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

Environmental Defense Fund, Inc. v. Corps of Engineers of the United States, 470 F.2d 289 (8th Cir. 1972), citing Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L. Ed.2d 136 (1971). "The court is not empowered to substitute its judgment for that of the agency." *Overton Park, supra,* at 416, 91 S.Ct. at 824; *see also* Environmental Defense Fund, Inc. v. Froehlke, 473 F.2d 346 (8th Cir. 1972).

The question of the Secretary's actions exceeding the scope of his authority has not been raised. By the Act's own language he is charged with the administration of its provisions. 23 U.S. C.A. Secs. 131(b), (c), (f).

■■ The issue of whether the Secretary's determination was arbitrary and unreasonable is valid only where the administrative ruling is not supported on any rational basis; something more than error is necessary. The fact that this court would, on the same evidence, arrive at a contrary decision will not support a claim of arbitrariness. N. L. R. B. v. Jas. H. Matthews & Co., Industrial Marking Products Division, 342 F.2d 129 (3rd Cir. 1965), cert. den. 382 U.S. 832, 86 S.Ct. 74, 15 L.Ed. 76 (1965); *accord,* Udall v. Washington, Virginia and Maryland Coach Co., Inc., 130 U.S.App.D.C. 171, 398 F.2d 765, 769 (1968).

The Secretary's Final Determination, March 1, 1972, found the State in noncompliance on the status of the State's

law at the time of the administrative hearing (September 23, 1971). It is the Secretary's contention that the State must be in compliance on the first day of the calendar year in which the funds will be appropriated. Thus, for the 1972 appropriation South Dakota would have to be in compliance as of January 1, 1972, even though the funds are not appropriated until July 1, 1972. This is a date the Secretary has set in accordance with the Act's delayed January 1, 1968, provisions, 23 U.S.C.A. Sec. 131(c), and also, to establish a cutoff date so that administrative action and appropriate judicial review can be terminated prior to the actual apportionment. The relevant South Dakota laws remained unchanged from the initial hearing until amended by HB 570, *supra,* passed on February 17, 1972, and effective as of July 1, 1972. S.D.Const. art. 3, Sec. 22; SDCL 1967 Sec. 2–14–16. In the proceedings before the Hearing Examiner HB 570 was not considered. The court, under the rules previously stated, must confine its review of the Secretary's determination, regarding South Dakota's compliance with the Act, to the record before the Secretary which included the South Dakota laws effective as of January 1, 1972.

Attorneys for the State contend that the Secretary's finding is arbitrary and unreasonable in the following five respects:

(1.) In view of the legislative intent evidenced by Congressional floor debates, and the lack of ambiguity on the face of 23 U.S.C.A. Sec. 131[2], the Secretary's "engrafting" of a typical or true zoning requirement to the South Dakota statutes is arbitrary.

The Hearing Examiner concluded from the evidence presented only by the federal government, the oral arguments, and submitted briefs, that the zoning implemented adjacent to South Dakota's

---

2. The State places great weight on the following language of subsection (d):

> The States shall have full authority under their own zoning laws to zone areas for commercial or industrial purposes, and the actions of the States in this regard will be accepted for the purposes of this Act.

federally supported highways, SDCL 1967 Chapter 31–29, was not contained in the State's comprehensive zoning title. Secondly, that the title and chapter which allegedly brought South Dakota into compliance, Chapter 31–29 provided only for commercial zones, disregarding normal or traditional zoning concepts which would provide for all types of land use. *E. g.*, residential, agricultural, industrial, commercial. Further, that the zoning done under Chapter 31–29 would not affect the tax rate of land so designated, a result inconsistent with true zoning. Also, the "strip zoning" provisions could be countermanded by a county zoning authority resulting in two zoning authorities over the same territory.

■ Taking up this first contention, it is this court's view that the Secretary's concurrence in the Examiner's findings had a rational basis and was not unreasonable. Viewed collectively the Secretary could legitimately conclude that the zoning provisions within which South Dakota sought to qualify for the Act's funds were not in harmony with the Congressional purpose. Congress never intended to subvert the Act's stated purpose to arbitrary actions taken by the individual state legislatures.

> When state or local governments act to zone areas for commercial or industrial purposes, in accordance with the state's *traditional* exercise of authority on zoning, these determinations will be accepted for purpose of billboard or junkyard control. *This language, of course, does not mean that a state or local authority could place a label "zoned commercial or industrial" on land adjacent to the Interstate and primary systems solely to permit billboards or junkyards and thereby frustrate the intent of* Congress stated in section 131(a). (emphasis added).

89 Congressional Record 26820 (1965) (remarks of Senator Randolph); *Accord*, 1965 U.S.Code Cong. and Admin.

News, pp. 3713–14 (letter of the Secretary of Commerce to John C. Kluczynski).

(2.) Partially continuing its first argument the State contends secondly that its legislation is consistent with the Act, backed, again, by the persuasive authority of Congressional floor debates, the 1970 Commission on Highway Beautification Recommendations, a report by the University of Michigan Law School and the obvious failure of local authorities to zone areas commercial *solely* for billboard purposes.

■ This court feels that the Secretary's determination concluded, and upon a rational basis, that South Dakota's legislation was not consistent with the Act's purpose. First, the State enacted legislation specifically in regard to the Act. SDCL 1967 Sec. 31–29–17. This was evidence of an intent not to subscribe to traditional comprehensive zoning concepts available in Title 11, legislation previously enacted. Chapter 31–29 zoned commercial corridors through the State corresponding to the federally assisted highway systems, affording the State virtually no protection from outdoor advertising and subjecting the Interstate traveler to an array of billboards in the midst of an area obviously agricultural. For example, under the South Dakota law existing as of January 1, 1972, on Interstate 90, crossing the State east to west, there would be only two short segments from one border to the other in which billboards would not be permitted. Each of these excepted segments would have been approximately two miles long. The Secretary reasonably concluded that these provisions were obviously inconsistent with the Act's purpose.

■ (3.) Thirdly, the State contends that the Secretary's refusal to negotiate an agreement as to "unzoned" areas is based upon the arbitrary and unreasonable premise that once zoned areas are settled, "unzoned" areas will fall into place; and, that the Secretary is under

the mistaken belief that SDCL 1967 Secs. 31–29–39 to 42 are unalterable mandates to the State negotiators.

The defendant-Secretary maintains that SDCL 1967 Sec. 31–29–42 precludes meaningful negotiations. That statute provides:

If for any reason agreement with the secretary of transportation cannot be reached within the terms and provisions of §§ 31–29–39 to 31–29–41, inclusive, the state highway commission through and with the assistance of the office of the state attorney general is hereby directed to submit any such disagreement to judicial review subject to the stay-of-penalty provisions of the Highway Beautification Act of 1965.

This court notes that the State Highway Commission, as negotiators for the State, had been instructed to "consider and advocate as the position of the state . . ." specifically listed criteria. SDCL 1967 Secs. 31–29–39 and 40. This court feels that the Secretary reasonably concluded that the State negotiators had been precluded from entering meaningful negotiations, with the concomitant necessity for give-and-take indicative of such action, by these binding restrictive statutory provisions. There is a rational basis for so concluding.

(4.) The State also contends that the Secretary has been arbitrary and unreasonable in not accepting the State's valid "customary use" determination in regard to size, lighting, and spacing as directed by 23 U.S.C.A. Sec. 131(d). The clarity of this subsection has been characterized by the attorneys for the State as "a mandate to the Secretary, which could not be more forcefully stated if it descended from the clouds upon tablets of stone."

■ The Secretary found South Dakota's determination unacceptable fully aware that the standards adopted for negotiated agreements are to be consistent with the State's customary use. But through the experience gained in administering the Act criteria of general applicability nationally had been formulated for comparison with those state standards submitted for approval. Charged with administering the Act and preserving the stated purpose from the caprice of the individual states, the Secretary established these generally accepted criteria as a floor to acceptable alternatives. This court concludes that the Secretary, so pursuing the Congressional policy of general uniformity across the nation, reasonably determined that South Dakota's provisions failed to obtain the level of any standards between a state and the Administrator previously accepted and, therefore, finds South Dakota's provisions unacceptable.

While the attorneys for the State have facetiously characterized the clarity of 23 U.S.C.A. Sec. 131(d) as a reasonable facsimile to divine guidance, it remains, nevertheless, for mere mortals to apply its provisions in a manner consistent with those applied to the other forty-nine states already in compliance.

■ (5.) The State's last argument is that the Act demands strip zoning, but be that as it may, once fully implemented, the South Dakota statute, Chapter 31–29, by incorporating by reference Title 11, satisfied the Secretary's traditional zoning requisites.

Based collectively upon all of the preceding answers to the State's contentions, this one must also be rejected as having been decided upon a rational basis by the secretary, precluding substitution of the court's judgment. The Secretary has consistently maintained that Title 11 remains in the proposal stage, yet to be enacted by action initiated at the local county level, and that Chapter 31–29 is not zoning. A conclusion that South Dakota had not provided effective control would logically follow.

II. *Trial de novo on the 1972 amendment to Chapter 31–29 (HB 570).*

The Secretary's Final Determination, March 1, 1972, found the State not in compliance on the status of the State's laws at the time of the administrative hearing (September 23, 1971). It is the

Secretary's contention that the states must be in compliance on the first calendar day of the year in which the funds will be appropriated. The relevant South Dakota law remained unchanged until amended by HB 570, *supra,* passed on February 17, 1972, and effective as of July 1, 1972.

In his letter accompanying his Final Determination, the Secretary informed the Governor that he had reviewed the 1972 amendment and found that it corrected size and lighting provisions of SDCL 1967 Sec. 31–29–40, but failed to correct other deficiencies, and was, therefore, unacceptable for the same reasons that led to the rejection of the original statutes. In addition the Secretary stated that unless the State took "further action in 1972 to provide for effective control of outdoor advertising, a hearing on the present law at this time would be premature." The State, interpreting this as an outright rejection of the 1972 legislative effort, and further, believing that an administrative hearing would be futile, initiated this appeal. The State requested that this court hear, *de novo,* evidence on the 1972 amendment.

Preceding the court hearing relative to the Secretary's motion for summary judgment, the Secretary, on November 8, 1972, informed the State of his proposed determination that South Dakota was not in compliance with the Act based upon the posture of the South Dakota laws at that time; that the ten per cent statutory reduction in the fiscal 1974 apportionment would be assessed. The Secretary then added that due to the State's pending litigation, if South Dakota enacted acceptable legislation and entered into a size, lighting and spacing agreement with the Federal Highway Administrator, both effective as of July 1, 1973, it would be in the "public interest" to suspend the penalty. The hearing before this court on the Secretary's motion for summary judgment commenced on November 13, 1972.

The 1972 amendment (HB 570) to Chapter 31–29 raises the second point upon which the State has sought judicial relief. This amendment, it is contended, brings South Dakota into compliance with the Act's provisions. The court received evidence as to the 1972 amendment subject to the Secretary's objection that the State was requesting a trial *de novo* of a matter never formally presented to the Secretary and that such evidence was therefore improper.

The Secretary's opinion expressed in his March 1, 1972, letter was premised upon only a review of the amendment's provisions. The Secretary was denied the opportunity to receive evidence and pass upon matters clearly within his expertise.

A fundamental statement of the principle to be applied in requests for *de novo* hearings is stated at 2 Am.Jur.2d Administrative Law Sec. 697 (1962):

> It is a general rule that in the absence of a statute so providing, a court is confined on review proceedings to the record made in the proceeding below, and may not hear new or additional evidence, unless the proceeding is a trial de novo. The same principle is applied in the field of review of action of an administrative agency, and the general rule is that in the absence of a statute providing otherwise, or a proceeding below which is not in accordance with due process requirements, judicial review of action of an administrative agency is not de novo but is limited to the record made in the proceeding before the agency, and the courts decline to hear new or additional evidence to review or revise findings of facts made by the administrative tribunal, especially where the evidence was available and could have been introduced in the administrative tribunal.

The Secretary's inquiry on November 8, 1972, as to the desire of the State in having a hearing on the 1972 South Dakota laws provided adequate opportunity for the State to be heard. To my knowledge that opportunity was never accepted. Additionally, the Secre-

tary made a timely standing objection to any evidence admitted *de novo,* in relation to the 1972 amendment, at the hearing on his motion for summary judgment.

This court is of the opinion that it must defer to the administrative expertise of the Secretary.

> A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action.

Unemployment Compensation Commission of Territory of Alaska v. Aragon, 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946). It is upon the above principles that I feel I cannot accept the 1972 amendment for consideration *de novo.*

The Secretary provided a thirty day period within which the State could request a hearing. Obviously that time has passed and would apparently foreclose future effort at the agency level in an attempt to save the 1974 appropriation from being assessed the ten per cent penalty. Up to the date of the hearing the Secretary had voluntarily exercised his discretion and had provided a grace period (an act not unknown in the negotiations with South Dakota) within which South Dakota could comply. Such an extension was subject to the two terms stated in his November 8, 1972, letter to the Governor. While the Secretary indicated he might favorably review 1973 South Dakota legislative amendments taking effect July 1, 1973, the Secretary further stated that any control statute taking effect in 1973 would be pursuant to his discretionary authority to suspend the Act, and review of the law would be administrative only. This language would appear to present South Dakota with an

opportunity to, yet, comply with the Act and save the 1974 appropriation.

In an effort to clarify the existing conflicts between the Secretary and the State and to prepare a foundation for future acceptable legislation, this court, at the hearing on the Secretary's motion for summary judgment, inquired of George F. McInturff, employed by the Secretary as the Chief of Scenic Enhancement Division, Office of Environmental Policy, Federal Highway Administration, if this court's summation of South Dakota's deficiencies was correct. Mr. McInturff agreed that those problems were:

(1.) That portion of SDCL 1967 Sec. 31–29–20, as amended in 1972, which sets forth, generally, mileage zones along the Interstate and primary highways does so in an arbitrary manner.[3]
(2.) The size, lighting and spacing provisions initially (through 1971) were unacceptable. But the 1972 law has partially corrected these deficiencies as to size and lighting, leaving spacing for further negotiations.

(3.) South Dakota's definition of "unzoned" areas contained in SDCL 1967 Sec. 31–29–39 is unacceptable. Consistent with uniform national standards the Secretary requires that at least one business establishment be located within these areas to be designated "unzoned" commercial or industrial.

(4.) SDCL 1967 Sec. 31–29–42 locks the State negotiators in, and if an agreement is not reached in accordance with the statute's dictates, the law directs that court action be initiated. This provision is too restrictive to promote meaningful negotiations.

This court would strongly suggest that the South Dakota Legislature initiate immediate steps for appropriate legislation to correct these objectionable provisions. I do so upon conviction that even if I had the authority to rule on

---

3. This court does not, at this point, take a position on the validity of what the Secretary has characterized as "strip" or "spot" zoning pursuant to Chapter 31–

29. It is sufficient for our purposes that the Secretary finds it unacceptable and has a rational basis for doing so. *See* Annot., 51 A.L.R.2d 263, 272 (1957).

the 1972 laws which sought to bring the State into compliance with the Federal Act, I would find them not in compliance, therefore placing the State in jeopardy of losing a second ten per cent in its federal highway appropriations. I find nothing within the legislative history which precludes the Secretary's overall supervision and exercise of power where local authorities have failed to measure up to the objectives of the Act. The Secretary has the responsibility to police performance of the agreements, to promote the reasonable, orderly and effective display of outdoor advertising adjacent to our federally assisted highways. The policy declaration contained in section 131(a) is entitled to judicial respect upon construction of the statute, and this court will not restrict the agency's responsibility and concomitant authority to protect and further the purposes and objectives of the Act's expressed purposes. *See* Housing Authority of City of Omaha, Neb. v. United States H.A., 468 F.2d 1, 8 (8th Cir. 1972).

Based upon the foregoing memorandum decision, defendant's motion for summary judgment is granted.