**VALLEY CONSTRUCTION COMPANY, Plaintiff,**

v.

**Martin HOFFMAN, Secretary of the Army of the United States, Defendant.**

No. CV476–145.

United States District Court, S. D. Georgia, Savannah Division.

July 23, 1976.

Walter C. Hartridge, Bouhan, Williams & Levy, Savannah, Hunter M. Gholson, Burgin, Gholson, Hicks & Nichols, Columbus, Miss., for plaintiff.

Edmund A. Booth, Jr., Asst. U.S. Atty., Augusta, Ga., Leroy C. Fowler, Dist. Counsel, W. H. Young, Jr., Asst. Dist. Counsel, U.S. Army Corps of Engineers, Savannah Div., Savannah, Ga., for defendant.

Edward J. Griffin, Defrees & Fiske, Chicago, Ill., for intervenor.

## OPINION AND ORDER

LAWRENCE, Chief Judge.

*Findings and Conclusions*

### I

This is an action brought by Valley Construction Company, pursuant to 5 U.S.C. § 701 *et seq.* and 10 U.S.C. §§ 2301-2314, to enjoin the proposed award of a contract by defendant to R and D Constructors, Inc. for the construction of an Aircraft Corrosion Control Facility at Robins Air Force Base in Georgia. The successful bidder has intervened in the action.

On March 16, 1976, the United States Army Corps of Engineers issued an invitation for bids for the construction of the facility at that Base. The invitation required separate bid figures for the base bid, which covered the aircraft hangar and its

functional equipment, and for Additive I which covered a stabilized platform crane system with two platform cranes. The bid invitation was subsequently amended to request separate bids, Additives II and III, for two additional cranes.

The invitation to bid (I.F.B.) included Standard Form 20. Paragraph 14 thereof sets forth the following conditions under which the additives are awarded:

"The low bidder for purposes of award shall be the conforming responsible bidder offering the low aggregate amount for the first or base bid item, plus or minus (in the order of priority listed in the schedule) those additive or deductive bid items providing the most features of the work within the funds determined by the Government to be available before bids are opened."

The bids were opened on April 22, 1976. The respective bids submitted by Valley Construction Company and R and D Constructors, Inc. were as follows:

|  | R and D | VALLEY |
| --- | --- | --- |
| Base.Bid | $ 2,953,983 | $ 2,985,483 |
| Additive I | 294,800 | 276,000 |
| Base + Additive I | 3,248,783 | 3,260,483 |
| Additive II | 97,855 | 82,500 |
| Base + Additive II | 3,346,638 | 3,342,983 |
| Additive III | 97,855 | 82,500 |
| Base + Additive III | 3,444,493 | 3,425,483 |

After the bids were opened, the Government revealed that the sum of $3,822,430 was available for the base bid and that $300,000 was available for Additives I, II and III. Because of the limit on the funds available for the additives, only the base bid plus Additive I was considered for award. The result was that R and D Constructors, Inc. (Intervenor herein) was determined to be the low bidder. Its Base Bid plus Additive No. I (stabilized platform crane system with two cranes) was $3,248,783 as compared to Valley's bid of $3,260,243 for those two items.

Valley contends that the Government acted arbitrarily and capriciously in determining the funds available for the project. It asks the Court to require the defendant to include Additives II and III in the award in which event Valley would be the low bidder —$3,425,483 as against R and D's total bid of $3,444,493. Valley seeks mandatory injunctive relief to compel the award of the contract to it or, in the alternative, requirement by this Court of reprocurement and rebidding of the job.

A lengthy evidentiary hearing was held before this Court at Savannah on June 18th and 19th. Eight witnesses testified and a considerable volume of documentary evidence was presented. On July 6th there was another hearing at which time further argument from counsel was heard.

II

Following the opening of the bids last April, a request was made that the Corps of Engineers announce the funds available. The following announcement was made: "MCAF [Military Construction Air Force] funds in the amount of $3,822,430 are available for contract award of this project. An additional $300,000 in equipment funds are available for platform crane system for additives Nos. I, II and III." It is Valley's contention that the $3,822,430 available was for the *project* as a whole and that of necessity it included the platform crane system which was an integral part of the construction.

Defendant says that the appropriation of funds by Congress which included the amount of $3,822,430 announced at bid opening was restricted to construction of the basic facility and could not be applied to the cost of the mechanized equipment (the platform crane system, Additives I, II and III) which were the subject of a separate and different appropriation by Congress. The Government further contends that MCAF funds cannot be used in payment of a Mechanized Material Handling System (MMHS) under the statutory and regulatory prohibition of use of funds for purposes other than that for which they were appropriated by Congress. "Except as otherwise provided by law, sums appropriated for the various branches of expenditures in

the public service shall be applied solely to the objects for which they are respectively made, and for no others." 31 U.S.C. § 628.

"Caution will be exercised to assure the availability of funds before an obligation is incurred, and that such funds are charged solely for the purposes for which the appropriation or funds involved are designated and for no other purposes. . . ." AR 37–21, 2–5c.

## III

The test of Valley's claim that the determination that R and D Constructors, Inc. was the low bidder within the funds available is whether the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". 5 U.S.C. § 706(2)(A); *Bank of Commerce of Laredo v. City National Bank of Laredo*, 484 F.2d 284, 289 (5th Cir.). Under the Administrative Procedure Act, an agency ruling is subject to attack only when "it is not supported on any rational basis; something more than error is necessary". *South Dakota v. Volpe, Secretary of Transportation, et al.*, 353 F.Supp. 335, 339 (S.D., S.Dakota). Courts should not overturn procurement determinations unless the aggrieved party demonstrates that there was no such basis for the agency's decision. *Rudolph F. Matzer & Associates, Inc. v. Warner*, 348 F.Supp. 911 (M.D., Fla.); *M. Steinthal & Co. v. Seamans*, 147 U.S.App.D.C. 221, 455 F.2d 1289; *International Engineering Company v. Richardson*, 367 F.Supp. 640, 650–51 (D.C.). The plaintiff bears the "heavy burden of proving that a procurement officer's decision was genuinely arbitrary and unreasonable." *Hayes International Corporation v. McLucas*, 509 F.2d 247, 258 (5th Cir.).

The federal courts are not empowered by the Administrative Procedure Act to substitute their judgment for that of the government agency. *Citizens to Preserve Overton Park, Inc. v. Volpe, Secretary of Transportation, et al.*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136. "[A]dministrative agencies are not held to a standard of perfection that would render them unique

among organs of government; it is enough if they have substantially performed their assigned tasks and have not abused the discretion confided to them." *Erie-Lackawanna Railroad Company v. United States*, 259 F.Supp. 964, 980–81 (S.D., N.Y.), reversed on other grounds, 385 U.S. 914, 87 S.Ct. 224, 17 L.Ed.2d 18.

Such are the legal standards by which this Court must measure the merits of the issues raised by Valley.

## IV

Did the Government act arbitrarily and capriciously or contrary to law in treating disparately the funding of the construction (building) cost and the Mechanized Material Handling System cost in the invitation for bids and in its determination of the low and responsible bidder under the additive and deductive clause (paragraph 14) of the IFB?

This question, or these questions, require scrutiny of the legislative and the administrative background of the appropriation for and the subsequent bidding on the Aircraft Corrosion Control Facility. It seems clear to me that in appropriating funds for the project Congress distinguished between the platform crane system (MMHS) and funds for the construction of the facility (MCAF).

The record shows that on September 23, 1974, Robins Air Force Base recommended that the budget for the construction of the facility incorporate "a set of stabilized platform material handling and personnel carrying cranes in the Corrosion Control Facility that is scheduled for funding in the FY76 Depot Plant Modernization Program". The estimated cost was "approximately $300,000 if installed in the Corrosion Control Facility in the FY76 program year". Gov't. Ex. 5. Acting through administrative channels, the Air Force subsequently requested Congress to appropriate $300,000 for the furnishing and installation of the platform crane system with two cranes. At the same period, a separate request was made for Military Construction Air Force funds for the purpose of construction of the Robins facility in the amount of $3,275,000.

The hearings before the House Subcommittee for military construction appropriation for fiscal year 1976 (Gov't. Ex. 9, p. 224) thus describe the Robins Air Force Base project: "Construct a 54,600 SF Covered Corrosion Control Facility and a stabilized platform crane system for C–141 and F–15 aircraft and helicopters." The summary of costs that followed shows an itemization of "Primary construction cost $3,096,000" and the cost of "Initial Outfitting equipment" as $300,000. The Congressional appropriation of MCAF funds contained a provision for an increase by the Air Force to the extent of 25 per cent. Such authority which was exercised by the Air Force resulted in a total of $3,822,430 available as MCAF funds [$3,275,000 × 124.89% = $4,090,000 – ($2,675.70) contingencies = $3,822,430].

V

The clear differentiation in Congressional intent between its MCAF and MMHS appropriations was preserved by the Government in the invitation-for-bid proceedings and procedures undertaken by the Corps of Engineers. A pre-design conference was held on February 21, 1975. It was then determined that the platform crane system with the two cranes would be furnished and installed by the Contractor rather than by the Government as was previously contemplated. The additives were to be "funded by Robins AFB from equipment funds . . . the procurement and installation of the cranes will be shown as a separate bid item." Gov't Ex. 1, Tab P, page 3.

In a memorandum dated February 23, 1976 the Air Force reaffirmed that it had committed $300,000 of equipment monies for the platform crane system. A communication to the Corps by the Air Force in March, 1976 officially confirmed that for bid opening purposes the maximum construction funds available for the facility totalled $3,822,430 and that an additional $300,000 had been reserved for the platform crane system.[1] The Corps was authorized to advertise for bids on such basis.

The original invitation for bids was, as stated, issued on March 16, 1976. It clearly showed that bid items 1–7 constituted the base bid items and that item No. 8 (additive No. I) represented the platform crane system. The base bid items (1–7) included certain items of equipment (3–7) essential to the functions of the Corrosion Control Facility. They were separate and distinct from the platform crane system, item No. 8.

When the original invitation was issued, no specifications were included for bid item No. 8 (Additive No. I), the platform crane system. The emphasis as to specifications was on the primary facility (bid item Nos. 1–7). The Government's own estimate of the contract cost of Additive No. 1 alone was $18,395 in excess of the $300,000 appropriation. See Gov't. Ex. 1, Tab H. However, after the original IFB went out, the Government determined that it was possible that two additional cranes (Additives II and III) might be obtained within the limit of the $300,000 of available MMHS funds.

Such amount had been transferred to the Corps under an inter-departmental purchase request on March 30, 1976. A week earlier the Project Manager of the Savannah District had been informed that the current estimated cost for Additive No. I was $236,000 and $75,000 for each of the two additional platform cranes (Additives II and III).

The first amendment to the original invitation was dated April 5, 1976. It added bid item No. 9 (additive II) and bid item No. 10 (III) along with specifications for Additive No. I. The amendment required all bidders to bid on all items of the schedule including the three additives.

1. "THE SUBJ FCLTY IS AUTH FOR CONSTR CONTRACT ADVERTISING. AN ADVERTISING SCHEDULE OF PUBLISHING IFB 16 MAR 76 AND OPENING BIDS 15 Apr 76 IS CONFIRMED. THIS MSG SERVES TO AUTH ADVERTISING WITH A MAX CONSTR CWE OF $4/090/000 or 124.29 PERCENT OF P/A. FUNDS IN AMOUNT OF $300/000 HAVE BEEN RESERVED FOR THE PLATFORM CRANE SYS. . . . Therefore, for bid opening purposes an amount of $3/822/430 is available for contract."

The opening of bids for the proposed award of the contract for construction of the Aircraft Corrosion Control Facility took place on April 22, 1976. It was followed by the Corps' announcement, previously mentioned, that "MCAF funds in the amount of $3,822,430 are available for contract award of this project. An additional $300,000 in equipment funds are available for platform crane system for additives Nos. I, II, and III."

In accordance with Paragraph 14 of the invitation for bids, the District Engineer eliminated Additives II and III (the two additional cranes) in determining the low bid for award purposes within the funds available and proposed to award the contract on the basis of the Base Bid plus Additive I (which in the case of both Valley and R and D was below the $300,000 MMHS fund limitation). As a result, although Valley was low bidder on the aggregate bids $3,425,483 as against R and D's total of $3,444,493, the latter was determined to be the low bidder under the Base Bid and first Additive in the amount of $3,248,783 as opposed to Valley's bid of $3,260,483.

On April 28th Valley protested the proposed award to R and D. The District Engineer forwarded his Administrative Report to the Chief of Engineers recommending through military channels that plaintiff's protest be denied. The Chief of Engineers sustained the District Engineer's position and denied the protest on June 8th. The plaintiff was notified of the denial of its protest on June 9th and was then informed that the contract would be awarded to R and D Constructors, Inc.

Valley Construction Company's action against the Secretary of the Army in the instant case followed such action.

## VI

The focal point of Valley's attack on award of the contract to R and D is, as I see it, the Government's failure to utilize excess funds available under the MCAF appropriation in order to cover the cost of the three additives as well as the construction portion of the project. Plaintiff contends that the platform crane system is part of the building which is not functional as a corrosion control facility without such system. Valley argues that the heavy built-in or installed runaway system of the crane is a permanent fixture, incorporated in the basic structure, and becomes an integral part of the realty.

Valley says that any argument by the Government to the contrary is resolved adversely by a regulation of the Department of Defense (DOD 70–40.5). It enumerates as *construction* items "shades, water coolers, window screens, dishwashers and chapel pews *as well as hoists and cranes, built-in.*" [2] (italics added). On such basis, Valley asserts that the excess construction funds appropriated for the hangar should be applied to payment for the Additives and that it is arbitrary not to do so.

Plaintiff contends further that the Air Force regulations dealing with mechanized materials handling systems (Gov't Ex. 6) in defining such systems mention only "stacker retriever cranes" which are not involved in the Robins project. The Regulation shows plainly that the specifically identified MMHS equipment was by way of example and that such class of equipment was "not necessarily limited to" the types referred to.

Considerable testimony was introduced as to this phase of the litigation. The Government contends that the platform crane system is not "built-in". It is merely bolted to the structural steel and is readily detachable therefrom for use elsewhere, the defendant contends. There was evidence at the hearing that a corrosion control facility is functional without a crane system.

I find it unnecessary to deal with the refinements of the common law and of

---

**2.** However, the regulation in question gives in paragraph B as an example of movable equipment, not constituting construction, "Any operational equipment for which installation mountings and connections are provided in the building design, and which are detachable without damage to the building or equipment."

federal regulations as to what is personalty and what is realty. The imperious factor in this case is that in the exercise of the broad powers of Congress in appropriating federal funds it clearly distinguished between the two funds used in building and equipping the Robins facility. The Air Force and the Corps of Engineers (which was designated to advertise and award the contract for the construction of the facility) carried out this Congressional intent. In so doing they did not violate the laws or the procurement regulations and procedures of the agencies. Sums appropriated by Congress must be applied solely to the objects of such expenditures and appropriations not used for the specific work designated by Congress cannot be used for any other purpose. 31 U.S.C. § 628; 21 Op.Atty.Gen. 420 (1896); 27 Op.Atty.Gen. 30 (1908). Adherence to law, no matter how unfair the disappointed bidder may regard it, is not capricious or arbitrary.

## VII

■ Valley attacks the change by the Corps of the procurement proceeding from a one bid basis to what it calls a fragmented procurement process involving multiple government funds with resulting dual evaluation of bids. Plaintiff criticizes the anomalies of a procedure under which if the primary additive (item 8) produced no bids under $300,000, the result would be that the procuring agent would skip the important first Additive and award the contract on the basis of the base bid plus Items 9 and 10 although neither of the latter would be of any use in the corrosion control aspect of the facility in the absence of Item 8.

The short answer is that plaintiff's *frémir d'horreur* did not materialize in the bidding. It is entirely irrelevant. The completer answer, however, is that the procedures and conditions under which additives are awarded (within "the funds determined by the Government to be available") were spelled out in the invitation for bidding. That procedure is required by the following Armed Services Procurement Regulation:

"*Additive of Deductive Items.* When it appears that funds available for a project may be insufficient for all the desired features of construction, the contracting officer may provide in the invitation for a first or base bid item covering the work generally as specified and for one or more additive or deductive bid items which progressively add or omit specified features of the work in a stated order of priority. In such case, the invitation shall include a provision substantially as in 7–2003.28, and the low bidder and the bid items to be awarded shall be determined as therein provided. The contracting officer, prior to the opening of bids, shall determine and record in the contract file the amount of funds available for the project. The amount so recorded shall be controlling for determining the low bidder but may be increased for determining the bid items to be awarded to him *provided* that award on such combination of bid items does not exceed the amount offered by any other conforming responsible bidder for the same combination of bid items." ASPR 2–201(b), xli. See also the implementation of such regulation by the Chief of Engineers, Engineer Reg. 1180–1–1, ECI 2–201(f).

Bidders on federal projects win by the rules and must lose under the same rules. Courts will not interfere with determinations by a procuring officer unless he has flouted the governing law and procedures or exercises his discretion as to procurement in an irrational and capricious manner. That is not the case here.

■ Valley criticizes the Government's failure to inform bidders that the funds available for the Additives were distinct from those appropriated for the basic construction and also that they were limited.[3]

---

**3.** Plaintiff, of course, does not concede that the cost of the Additives was limited in law or in fact.

Plaintiff says that this was arbitrary and capricious since the procedure can produce inequitable results. A bidder on a federal project can ascertain if he wishes, the limitation of funds appropriated by Congress for a specific object. Records of the Appropriations Committee hearings are public. It is the established policy of the Corps not to disclose the available funds prior to the bid opening and then only if a bidder requests.[4] "Contracting officers should not announce, at bid opening, the funds available. This will not preclude revealing the amount available in answer to a specific request for such information by an individual bidder." See ECI 2–201(f), ER 1180–1–1, May 8, 1970.

This policy tends to promote the competitive bidding system. Whether the funding is by a single or in a separate fund would be of no real significance to the bidder. His proposal should be the same in either case.

Plaintiff has failed to carry the burden of showing that the determinations and decisions by the defendant were arbitrary, unreasonable or capricious.

### ORDER

In accordance with the foregoing findings and conclusions, the injunctive relief sought by plaintiff is denied. Judgment is rendered in favor of the defendant and the intervenor.

---

4. The President of Valley Construction Company was aware of this policy. He requested a reading by the Corps of the funds available after the opening of bids. Gov't. Ex. 1, Tab B, p. 2.