STATE of SOUTH DAKOTA, Appellant,

v.

Brock ADAMS, U. S. Secretary of Transportation, William M. Cox, Federal Highway Administrator, Arthur Johnson, Division Highway Administrator and the United States of America, Appellees.

No. 78–1199.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1978.

Decided Nov. 29, 1978.

---

David L. Zuercher, Asst. Atty. Gen., S. D. Dept. of Transp., Pierre, S. D., for appellant; Carl W. Quist, Asst. Atty. Gen., and William J. Janklow, Atty. Gen., State of S. D., Pierre, S. D., on the briefs.

Susan M. Chalker, Atty., Dept. of Justice, Civil Div., Appellate Section, Washington, D. C., for appellees; Robert E. Kopp, Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., and David V. Vrooman, U. S. Atty., Sioux Falls, S. D., on the brief.

Before LAY and BRIGHT, Circuit Judges, and HARPER, Senior District Judge.*

BRIGHT, Circuit Judge.

On July 11, 1977, the Secretary of Transportation, Brock Adams (Secretary), notified the State of South Dakota that he had made a preliminary determination that South Dakota had failed to exercise "effective control" of outdoor advertising as required by Title I of the Highway Beautification Act, 23 U.S.C. § 131 (1976), and that as a result the Secretary would temporarily reserve ten percent of the State's next federal-aid highway apportionment pending his final determination of the "effective control" question. In an effort to prevent such action prior to the Secretary's final determination, the State brought this suit seeking injunctive and declaratory relief against the Secretary. The district court denied the requested relief, and this timely appeal followed.

I.

The manner in which the federal government provides highway funding to the states is governed by the Federal-Aid Highway Act, 23 U.S.C. § 101 et seq. (1976). The funding proceeds through several stages. Ninety days prior to the start of each fiscal year the Secretary advises each state of the amount of funds that will be apportioned to it that year. 23 U.S.C. § 104(e). On October 1 of each fiscal year the Secretary, using formulas set forth in 23 U.S.C. § 104(b), apportions among the states the sums authorized to be appropriated. Once apportioned, the funds are available for obligation by the states. 23 U.S.C. § 118(a).[1] Funds are obligated when the Secretary approves a highway project submitted by a state. 23 U.S.C. § 106(a). After work is completed on a project, the state pays the costs and submits vouchers to the Secretary, who pursuant to congressional appropriations acts reimburses the state in the amount of the federal share. 23 U.S.C. §§ 120, 121.

In 1965, Congress enacted the Highway Beautification Act, 23 U.S.C. §§ 131, 136, 319, which placed strict controls on outdoor advertising adjacent to the Interstate and primary highway systems.[2] Where the Secretary determines that a state has failed to

---

* ROY W. HARPER, United States Senior District Judge, Eastern District of Missouri, sitting by designation.

1. Interstate funds, which are those used to construct or resurface the 42,500 miles of roads comprising the Interstate System, 23 U.S.C. § 103(e), are apportioned on October 1 of the year preceding the fiscal year for which authorized and remain available for obligation for two years after the fiscal year for which authorized. All other highway funds are apportioned on October 1 of the fiscal year for which authorized and remain available for obligation for three years after the fiscal year for which authorized. 23 U.S.C. §§ 104(e), 118(b). Any amounts unexpended during those four-year periods lapse. Lapsed amounts that had been authorized for the construction of the Interstate System are immediately reapportioned among the other states in accordance with the provisions of 23 U.S.C. § 104(b)(5)(A). 23 U.S.C. § 118(b).

2. There are four federal-aid highway systems: primary, urban, secondary, and Interstate. 23 U.S.C. § 103. The primary system is "an adequate system of connected main roads impor-

provide for "effective control" of outdoor advertising,[3] the state's apportionment of federal-aid highway funds is reduced by ten percent in accordance with 23 U.S.C. § 131(b).[4] The procedural rules concerning such a reduction are set forth in 23 U.S.C. § 131(*l*).[5] Those rules require that, at least sixty days before making a final determination to impose the ten percent penalty, the Secretary must give the state written notice of his proposed determination, a statement of reasons for it, and an opportunity for a hearing. Following the hearing, if one is held, the Secretary is to issue a written order setting forth his final determination. Within forty-five days the state may appeal an adverse order to a United States District Court. The Secretary may not reapportion to other states the amount withheld from the state's apportionment pending final judgment on the appeal. However, the Secretary's order is effective to reduce the state's apportionment pending judicial review.

---

tant to interstate, statewide, and regional travel, consisting of rural arterial routes and their extensions into or through urban areas." 23 U.S.C. § 103(b)(2). The Interstate System "connect[s] by routes, as direct as practicable, the principal metropolitan areas, cities, and industrial centers * * *." 23 U.S.C. § 103(e)(1).

3. "Effective control" means that, with a few exceptions, only directional and official signs are permitted within view of the highways. 23 U.S.C. § 131(c). A major exception concerns commercial and industrial areas, which may contain outdoor advertising so long as the Secretary and the states agree on the size, lighting, and spacing of the advertising, consistent with customary use. 23 U.S.C. § 131(d).

4. Section 131(b) reads as follows:
(b) Federal-aid highway funds apportioned on or after January 1, 1968, to any State which the Secretary determines has not made provision for effective control of the erection and maintenance along the Interstate System and the primary system of outdoor advertising signs, displays, and devices which are within six hundred and sixty feet of the nearest edge of the right-of-way and visible from the main traveled way of the system, and Federal-aid highway funds apportioned on or after January 1, 1975, or after the expiration of the next regular session of the State legislature, whichever is later, to any State which the Secretary determines has not made provision for effective control of the erection and maintenance along the Interstate System and the primary system of those additional outdoor advertising signs, displays, and devices which are more than six hundred and sixty feet off the nearest edge of the right-of-way, located outside of urban areas, visible from the main traveled way of the system, and erected with the purpose of their message being read from such main traveled way, shall be reduced by amounts equal to 10 per centum of the amounts which would otherwise be apportioned to such State under section 104 of this title, until such time as such State shall pro-

vide for such effective control. Any amount which is withheld from apportionment to any State hereunder shall be reapportioned to the other States. Whenever he determines it to be in the public interest, the Secretary may suspend, for such periods as he deems necessary, the application of this subsection to a State.

5. The relevant portion of § 131(*l*) reads as follows:
(*l*) Not less than sixty days before making a final determination to withhold funds from a State under subsection (b) of this section, * * * the Secretary shall give written notice to the State of his proposed determination and a statement of the reasons therefor, and during such period shall give the State an opportunity for a hearing on such determination. Following such hearing the Secretary shall issue a written order setting forth his final determination and shall furnish a copy of such order to the State. Within forty-five days of receipt of such order, the State may appeal such order to any United States district court for such State, and upon the filing of such appeal such order shall be stayed until final judgment has been entered on such appeal. * * * The judgment of the court shall be subject to review by the United States court of appeals for the circuit in which the State is located and to the Supreme Court of the United States upon certiorari or certification as provided in title 28, United States Code, section 1254. If any part of an apportionment to a State is withheld by the Secretary under subsection (b) of this section * * * the amount so withheld shall not be reapportioned to the other States as long as a suit brought by such State under this subsection is pending. Such amount shall remain available for apportionment in accordance with the final judgment and this subsection. Funds withheld from apportionment and subsequently apportioned or reapportioned under this section shall be available for expenditure for three full fiscal years after the date of such apportionment or reapportionment as the case may be.

## II.

In 1966, in response to the Highway Beautification Act, South Dakota enacted the Highway Beautification and Regulation of Advertising Act, S.D. Codified Laws Ann. § 31–29. In 1973, as a result of a determination by the Secretary that South Dakota had not provided for effective control of outdoor advertising, the State amended its statute to bring it into compliance with the federal law.[6] In September 1976, however, the Supreme Court of South Dakota invalidated the conforming statute in *Hogen v. South Dakota State Board of Transportation*, 245 N.W.2d 493 (S.D.1976), on the ground that it unconstitutionally delegated legislative authority to the State Board of Transportation.

In the 1977 South Dakota legislative session, the State considered corrective legislation. The Secretary advised the State of his opinions as to the adequacy of various legislative proposals and warned of the consequences of noncompliance. Nevertheless, on April 1, 1977, the State enacted a statute that the Secretary earlier had indicated was in conflict with the federal law.

On July 11, 1977, the Secretary notified the State of his preliminary determination that it was not providing for effective control of outdoor advertising. He also advised the State that ten percent of its next federal-aid highway apportionment would be reserved pending his final determination of the effective control question.

The reservation of the apportionment of federal highway funds took effect on October 1, 1977. Two months prior to that, on August 5, 1977, the State requested an evidentiary hearing. The hearing was not held until December 13–15, 1977.[7] On December 22, 1977, the State instituted the present lawsuit. The district court entered judgment in favor of the Secretary on January 17, 1978, and this appeal followed. No final determination by the Secretary had been made as of the date of submission of this case to us in September 1978, but as we note *infra* at 920 n.10, the Secretary issued his final administrative determination on November 9, 1978.

## III.

The Secretary contends that his interim reservation of ten percent of South Dakota's apportionment of highway funds comes within his broad powers to administer the Federal-Aid Highway Act. Under 23 U.S.C. § 315, "the Secretary is authorized to prescribe and promulgate all needful rules and regulations for the carrying out of the provisions of [the Act]." Pursuant to this authority, the Secretary promulgated 23 C.F.R. § 1.36 (1977), which authorizes the administrator of the Federal Highway Administration to take such action as he

6. As we learn from the opinion in *South Dakota v. Volpe*, 353 F.Supp. 335 (D.S.D.1973), this earlier controversy arose on May 18, 1971, when the Secretary informed South Dakota of his proposed determination to withhold 10 percent of the State's fiscal 1973 apportionment because of the State's failure to provide for effective control of outdoor advertising. Following an evidentiary hearing, the Secretary announced on March 1, 1972, that the 10 percent penalty would be imposed. The State then filed suit to regain the withheld funds, but the district court upheld the Secretary's action. *Id.* As a result, the State amended its statute in 1973 to comply with federal standards. *See Hogen v. South Dakota State Board of Transportation*, 245 N.W.2d 493, 495 (S.D.1976). The Secretary's brief in the present case recites that "[a]s of the summer of 1976, South Dakota was in substantial compliance with minimum Federal standards."

7. At the district court trial an attorney representing South Dakota explained the delay as follows:

A lot of the delay had to do with where the hearing would be held. Governor Kneip had requested that the hearing be held in South Dakota and the Secretary of Transportation apparently took that under advisement and there were various conversations given that. Then it was ultimately decided to hold the hearing in South Dakota and then there was the matter of getting the Administrative Law Judge assigned to the case who was assigned from the Office of Consumer Products Safety and then the other part of the delay was getting a time schedule for the convenience of the parties and Law Judge.

deems appropriate to bring a state into compliance with the Act.[8]

The Secretary argues that his action in this case was appropriate because · it preserves the status quo until he can make his final determination as to whether South Dakota has provided for effective control of outdoor advertising. Without the interim withholding, the State could obligate monies to which it may not be entitled because of its noncompliance with the Act, and thereby effectively nullify the penalty provisions contained in section 131(b).

The State, on the other hand, stresses that nothing in Title I of the Highway Beautification Act expressly authorizes the Secretary's temporary withholding or reservation of highway funds pending his final determination. In light of the care taken by Congress to specify the manner in which the ten percent sanction is to be applied, its silence with respect to a temporary withholding power is highly significant. Only after a final determination, argues the State, can the Secretary withhold highway funds.

Despite the absence of explicit statutory authority for the Secretary's action, we hold that the Act impliedly allows it. "It has been the law at least since *McCulloch v. Maryland*, 4 Wheat. 316, 4 L.Ed. 579 [1819], that the lawful delegation of a power carries with it the authority to do whatever is reasonable and appropriate properly to effectuate the power." *Gallagher's Steak House v. Bowles*, 142 F.2d 530, 534 (2d Cir. 1944). *See also* 2A Sutherland, Statutory Construction § 55.04 (4th ed. 1973). We are convinced that the Secretary's interim withholding here is a reasonable and appropriate method of ensuring the efficacy of the ten percent penalty.

Under section 131(*l*), the Secretary possesses the power to impose the ten percent penalty in as few as sixty days after he

notifies the State of his proposed determination. Consistently with the provisions of the Administrative Procedures Act, the Secretary could have required a hearing thirty days after his notice to the State, and expedited matters to enable him to make a final determination thirty days thereafter, thereby coming within the authorization of section 131(b) to reach a final determination not less than sixty days after notice to the State. Because here the Secretary notified the State of his proposed determination on July 11, 1977, the Secretary could have made his final determination in advance of the October 1, 1977, apportionment date. He did not do so, but afforded the State an extended period of time to administratively contest the Secretary's preliminary determination of the State's failure to exercise "effective control" of outdoor advertising. In order to retain a right to penalize the State in case it proved unable to persuade him that his proposed determination was incorrect, the Secretary simply set aside ten percent of the State's apportionment pending his final determination.

This procedure carries a less drastic effect than a final withholding decision, which, as we have noted, might have been made prior to October 1, 1977, because the amount temporarily retained still remains available to the State if the Secretary makes a final determination of the "effective control" question favorable to the State. Therefore, without causing undue prejudice to the State, the Secretary's interim withholding properly preserved the status quo pending the outcome of the hearing.

In *State of Nebraska, Department of Roads v. Tiemann*, 510 F.2d 446 (8th Cir. 1975), we were faced with a question concerning the Secretary's implied power to compel compliance with the Federal-Aid

---

**8.** The regulation reads as follows:

   If the Administrator [of the Federal Highway Administration] determines that a State has violated or failed to comply with the Federal laws or the regulations in this part with respect to a project, he may withhold payment to the State of Federal funds on

account of such project, withhold approval of further projects in the State, and *take such other action that he deems appropriate under the circumstances, until compliance or remedial action has been accomplished by the State to the satisfaction of the Administrator.* [Emphasis added.]

Highway Act. There the Federal Highway Administrator determined that the State of Nebraska had not complied with section 109(d) of the Act because it had maintained tourist attraction signs in the interstate right-of-way without the concurrence of the Secretary.[9] On that basis, the Secretary withheld approval of all primary system highway projects in Nebraska until the signs were removed. Although that action by the Secretary was not expressly authorized by the Act, we upheld it as within the Secretary's broad powers to administer the Act.

Similarly, in the present case, the Secretary's conduct is consistent with the enforcement powers Congress conferred upon the Secretary to achieve highway beautification.

Accordingly, we hold that the Secretary's action is not unauthorized and that the district court properly denied the State of South Dakota injunctive and declaratory relief.[10]

Affirmed.

---

9. Section 109(d) reads as follows:

    (d) On any highway project in which Federal funds hereafter participate, or on any such project constructed since December 20, 1944, the location, form and character of informational, regulatory and warning signs, curb and pavement or other markings, and traffic signals installed or placed by any public authority or other agency, shall be subject to the approval of the State highway department with the concurrence of the Secretary, who is directed to concur only in such installations as will promote the safe and efficient utilization of the highways.

10. Our holding does not indicate approval of the administrative delays that have occurred in this case. In a matter of such public importance, we believe that the Secretary and his designees engaged in the administrative determination should have acted with far more alacrity than has been displayed here. We are now advised that the Secretary, as of November 9, 1978, has made a final determination of the "effective control" issue adverse to South Dakota. That determination is subject to judicial review under § 131(*l*) and is not an issue on this appeal.