**SIERRA CLUB, Plaintiff-Appellant,**

v.

**Rex C. LEATHERS, et al.,
Defendants-Appellees.**

**No. 83–8756.**

United States Court of Appeals,
Eleventh Circuit.

March 8, 1985.

Stephen E. O'Day, Atlanta, Ga., Frederick S. Middleton, III, Washington, D.C., for plaintiff-appellant.

Curtis E. Anderson, Asst. U.S. Atty., Atlanta, Ga., Robert S. Greenspan, Appellate Staff, Margaret E. Clark, Freddi Lipstein, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendants-appellees.

Before RONEY and ANDERSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

RONEY, Circuit Judge:

The Sierra Club sought declaratory and injunctive relief against the Federal Highway Administration and the United States Department of Transportation alleging they failed to enforce provisions of the

Highway Beautification Act (HBA, the Act), 23 U.S.C.A. § 131, regarding the control of outdoor advertising in South Carolina. The trial court held that defendants' discretionary authority under the Act is precluded from judicial review under the terms of the statute and the doctrine of prosecutorial discretion. It dismissed Sierra Club's complaint. We vacate and remand to the district court to transfer the case to the United States District Court in South Carolina for further proceedings.

The Highway Beautification Act provides generally for the regulation and control of billboards and other outdoor advertisements adjacent to interstate and federal aid primary highways. Its purpose is "to protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty." 23 U.S.C.A. § 131(a). The controls are described in general terms in subsections (c) and (d) of section 131 of the Act implemented in detail by Federal Highway Administration (FHWA) regulations found in 23 C.F.R. Part 750.

The Act requires each state participating in the highway beautification program to exercise "effective control" over outdoor advertising. States not maintaining effective control are subject to the Act's enforcement provisions. The penalty for a noncomplying state is that its federal aid highway funds "shall be reduced by amounts equal to 10 per centum ... until such time as such State shall provide for effective control." 23 U.S.C.A. § 131(b). *See also South Dakota v. Adams*, 587 F.2d 915 (8th Cir.1978), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2404, 60 L.Ed.2d 1065 (1979).

Having been notified of alleged violations of the Act in South Carolina by Dr. Charles Floyd, Chairman of the Department of Real Estate and Urban Development at the University of Georgia, an FHWA inspection team conducted a fact finding inspection and delivered a report of its findings and recommendations. Under the section entitled "recommendations," the report stated that "[t]he findings of this inspection indicate that South Carolina is not effectively controlling outdoor advertising." Various corrective measures de-signed to bring South Carolina into compliance were suggested, and the report was submitted to the Administrator.

Dr. Floyd received a letter on July 16, 1981 from the Region 4 FHWA Administrator indicating that the inspection team report was a draft subject to future revision. He was further informed on September 9, 1981 that the FHWA was "satisfied with actions already taken or planned courses of action by South Carolina ... in assuring compliance with Federal requirements for outdoor advertising." The letter concluded by noting that the FHWA was making an "overall assessment" of the outdoor advertising program for the region.

The Regional Administrator, Rex C. Leathers, wrote Dr. Floyd again on January 7, 1982. He stated that the "overall assessment" mentioned in the September 9 letter had been completed, and that a "Regional Policy" covering four HBA issues had been developed. No further administrative action is indicated in the record, and this letter is apparently the last contact between Dr. Floyd and defendant prior to instigation of this lawsuit.

Plaintiff sought: (1) a declaratory judgment declaring that South Carolina is not exercising effective control over outdoor advertising; (2) a mandatory injunction requiring defendants to make a formal determination that South Carolina is not exercising that effective control; and (3) a mandatory injunction requiring defendants to withhold ten percent of South Carolina's federal aid highway funds until South Carolina demonstrated to the district court's satisfaction that it was exercising effective control. South Carolina was not made a party to the lawsuit. The suit was brought in the northern district of Georgia.

The Act provides that a state whose federal highway funds are reduced pursuant to the Act's requirements may appeal that decision to the district court within that state. 23 U.S.C.A. § 131(*l*). Review of the district court's holding is in the "court of appeals for the circuit in which the state is located...." The congressional purpose behind this section was to ensure "that all these questions may be raised in a single

court action and a multiplicity of suits avoided." H.R.Rep. No. 1084, 89th Cong., 1st Sess. (1965), *reprinted in* [1965] U.S. Code Cong. & Ad.News 3710, 3718.

In order to carry out the congressional purposes behind these jurisdictional provisions, South Carolina should be a party to this lawsuit. *First*, although this suit is not based on the Secretary's decision to withhold ten percent of South Carolina's federal highway funds, that is the result plaintiff seeks. *Second*, the HBA is effective in South Carolina only because of the outdoor advertising control agreement executed between South Carolina and the FHWA. In effect, plaintiff is alleging that South Carolina has breached that agreement. The FHWA denies that the agreement was broken.

If this Court were to grant the relief plaintiff seeks, the Secretary would have to withhold ten percent of South Carolina's federal highway funds. South Carolina could then ask for judicial review of the Secretary's decision in South Carolina district court. The Sierra Club would not be a party to that action and the defendant would be the FHWA. South Carolina, as plaintiff, would contend that it was not breaching its agreement, the position with which the Agency agrees. The district court would be faced with the situation of having parties supposedly on opposite sides of an issue in actual agreement on the underlying basis of the suit. In any event, for the Georgia court to exercise jurisdiction over the dispute would necessarily lead to multiple litigation over a single issue, which Congress sought to avoid.

■ Rule 19(a) of the Federal Rules of Civil Procedure governs party joinder. Under that rule a court must first determine whether the non-party is [2] person who is "subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action...." If so, the non-party must be joined as a party if

(1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

Fed.R.Civ.P. 19(a). Rule 19(a)'s factors must be reviewed in light of "pragmatic concerns, especially the effect on the parties and the litigation...." *CTI–Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1290 (11th Cir.1982), *cert. denied*, 459 U.S. 1173, 103 S.Ct. 820, 74 L.Ed.2d 1017 (1983), *citing Challenge Homes, Inc. v. Greater Naples Care Centers, Inc.*, 669 F.2d 667, 669 (11th Cir.1982).

■ It is clear in viewing the facts of this case in light of "pragmatic concerns" that "complete relief" cannot be accorded those already parties without the joinder of South Carolina. Plaintiff correctly points out that the mere risk of inconsistent adjudications does not "negate the court's power to adjudicate as between the parties who have been joined." Fed.R.Civ.P. 19 advisory committee note. Yet the possibility of inconsistent adjudications is the key to this case. The issue is whether this court can finally determine a controversy without South Carolina being made a party.

Whether South Carolina is subject to service of process and thus joinable under Rule 19(a) is problematic. Fed.R.Civ.P. 4(f) limits service of process to the territorial limits of the district court's state unless a federal statute or other rule authorizes out-of-state service of process. No federal statute provides for service of process over South Carolina here. Fed.R.Civ.P. 4(e), however, allows extra-territorial service "under the circumstances and in the manner" prescribed by state law. Georgia's long-arm statute, Ga.Code Ann. 9–10–91, could conceivably meet Rule 4(e)'s requirement. But even if South Carolina could be joined in the Georgia litigation, the Act gives it a specific right to litigate the issues in South Carolina and upon joinder, an immediate transfer would be in order.

Therefore, it is appropriate to immediately transfer the case to a United States

District Court under the provisions of 28 U.S.C.A. § 1404(a),.which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Under 28 U.S.C.A. § 1391(e), venue in an action where the defendants are federal officials lies either where all defendants reside or where the claim arose. Certainly plaintiff's claim "arose" in South Carolina, so that venue is proper in South Carolina as well as in the northern district of Georgia, which is where the federal officials involved here reside.

The district court's decision granting defendant's motion for summary judgment on the merits is vacated, and the action is remanded to the district court for transfer to a United States District Court in South Carolina for further proceedings.

VACATED and REMANDED.