Richard KASHA, Petitioner,

v.

## DEPARTMENT OF TRANSPORTATION, Respondent.

Commonwealth Court of Pennsylvania.

Argued May 8, 2001.

Decided Aug. 2, 2001.

Jonathan G. Babyak, Pittsburgh, for petitioner.

Jeffrey L. Giltenboth, Harrisburg, for respondent.

Before SMITH, Judge, LEADBETTER, Judge, and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Richard Kasha appeals from a final order of the Secretary of the Department of Transportation (Secretary) affirming the Department of Transportation's (DOT) request to remove an illegal or abandoned sign. We affirm.

Kasha and his sister inherited a property located along Interstate 79 in Cranberry Township, Butler County. The property is presently zoned "Highway Commercial" by the Township. Since the purchase of the property in 1955 by Kasha's father, it has been used commercially.

In 1970, a sign (subject sign) was erected on the property advertising the "Tou Rest Motel" and the "Red Carpet Restaurant," commercial activities which had been conducted on the property since about 1955. The subject sign actually consisted of two signs facing in the same direction and was supported by wooden poles. Sometime in early spring of 1997, a new signboard was erected. The subject sign remained the same size but was replaced by some new materials, the extent of which is not known. The new sign still used wooden poles, which appeared to be new. Sometime between July of 1998 and November of 1998, a new sign message was erected on the board, advertising St. Francis Hospital, which is not located on the property and is thus an off-premise activity.

On December 2, 1998, DOT sent a "Request to Remove Illegal or Abandoned Sign" letter to Kasha. In the letter, DOT alleged that Kasha was maintaining a sign in an area that does not appear to be commercial or industrial, and advised Kasha that the entire structure must be re-

moved. By letter dated December 15, 1998, Kasha advised DOT that he believed the sign was permissible because the property on which the sign is located is zoned commercial and because the sign was erected in 1970, before the effective date of the Outdoor Advertising Control Act of 1971, (Act), Act of December 15, 1971, P.L. 596, *as amended,* 36 P.S. §§ 2718.101–2718.115. On March 4, 1999, DOT mailed a "Final Notice to Remove Illegal or Abandoned Sign." On March 18, 1999, Kasha appealed and requested a hearing. By letter dated June 10, 1999, DOT advised Kasha that it was revising its notice to include abandonment.

■ A hearing was held before a hearing examiner on June 17, 1999. Thereafter, the hearing officer issued a proposed report, in which he concluded that when the sign stopped advertising on-site activities, it lost its "grandfather" status and must now comply with the Act. The hearing officer also concluded that the replacement of the sign in the manner described constituted abandonment; that when changing from a legal use to an illegal use, the sign was deemed abandoned; and, by change in the nature of the sign to off-premise advertising, the sign was properly deemed abandoned. The hearing officer further concluded that the sign did not meet the requirements for establishment of a "Kerr Area" as provided for in 36 P.S. § 2718.104(1)(v) and 67 Pa.Code § 445.4(a)(2).[1] Finally, the hearing officer concluded that DOT's definition of an "area clearly established by law as industrial or commercial" as "a zoned commercial or industrial area" is a reasonable and appropriate exercise of its rule-making authority under the Act and is consistent with the purpose of the Act. Kasha filed exceptions to the proposed report which were denied by the Secretary of DOT. Kasha now appeals to this Court.[2]

On appeal, Kasha argues that (1) the grandfather status of the sign was not affected by a change in the sign's message; (2) the property upon which the sign is located is commercial for purposes of the Act; and (3) DOT failed to prove that the subject sign was abandoned.

We first consider Kasha's argument that the grandfather status of the sign was not affected by a change in the sign's message. Kasha argues that there is no provision in the Act which pertains to the message contained on an outdoor advertising device. Kasha contends that, had the sign contained an off-premise message in 1970, the current message would be permitted. Kasha argues that to distinguish between the grandfathering of a sign based simply upon the message is unconscionable.

The Act was enacted to protect the Commonwealth's interest in receiving federal funds, and, at the same time, to further the national policy of highway beautification under the federal Highway Beautification Act, 23 U.S.C. § 131, by limiting the proliferation of advertising signs along the highways. Section 2 of

---

1. A "Kerr Area" is described in Section 4(1)(v), 36 P.S. § 2718.104(1)(v), as an area "zoned commercial or industrial along the interstate system and lying within the boundaries of an incorporated municipality as such boundaries existed on September 21, 1959, or in another area along the interstate system which, as of September 21, 1959, was clearly established by law as industrial or commercial."

2. Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether necessary findings of fact are supported by substantial evidence. *Penn Advertising, Inc. v. Department of Transportation,* 730 A.2d 1060 (Pa.Cmwlth.1999), *petition for allowance of appeal denied,* 560 Pa. 752, 747 A.2d 372 (1999).

the Act, 36 P.S. § 2718.102; *Patrick Media Group, Inc. v. Department of Transportation*, 533 Pa. 188, 620 A.2d 1125 (1993). The Act became effective on December 15, 1971. Pursuant to Section 7 of Act, 36 P.S. § 2718.107, an annual permit is required for each outdoor advertising device regulated by the Act.

The Act and the regulations adopted by DOT distinguish between on-premise advertising devices and off-premise advertising devices. Section 4(1)(iii) of the Act, 36 P.S. § 2718.104(1)(iii), permits "[o]utdoor advertising devices advertising activities conducted on the property on which they are located."[3] Other outdoor advertising devices are generally permitted only in certain zoned or unzoned commercial or industrial areas pursuant to Section 4(1)(iv), (v) and (vi) of the Act.[4] The regulation pertaining to on-premise signs is found in 67 Pa.Code § 445.5. That regulation provides that an on-premise sign may not be erected or maintained in a manner inconsistent with certain enumerated criteria. The regulation pertaining to signs in zoned or unzoned commercial or industrial areas is found at 67 Pa.Code § 445.4.

That regulation provides specific criteria for the size, spacing and lighting of signs in zoned or unzoned commercial or industrial areas.

Prior to 1998, the subject sign advertised commercial activities conducted on the premise. The hearing officer found that the sign was "not nonconforming,[5] because, prior to 1998, as an on-premise sign, upon application, [it] could have received a valid permit," and that the sign, "although not required to get a permit, complies with the requirements of the Act as an on-premise exception to prohibition."[6] Proposed Report, p. 11. Sometime between July and November of 1998, a new sign message was erected, advertising St. Francis Hospital, a facility not located on the property. Thus, the subject sign no longer advertised an on-premise activity. The hearing officer concluded that when the subject sign was converted from an on-premise to an off-premise sign, it lost its grandfather status and must comply with the Act.

■ Kasha contends that it is unconscionable to distinguish between the

---

**3.** The Act also permits official signs and notices which are required or authorized by law, 36 P.S. § 2718.104(1)(i); outdoor advertising devices advertising the sale or lease of the real property upon which they are located, 36 P.S. § 2718.104(1)(ii); outdoor advertising devices in the specific interest of the travelling public, 36 P.S. § 2718.104(1)(vii); directional signs, 36 P.S. § 2718.104(1)(viii); and, any other outdoor advertising devices permitted or authorized along the interstate system by an official agreement between the Commonwealth and the federal government, 36 P.S. § 2718.104(1)(ix).

**4.** The Act also permits outdoor advertising devices in zoned or unzoned commercial or industrial areas along those portions of the interstate system constructed on a right-of-way, any part of the width of which was acquired on or before July 1, 1956, 36 P.S. § 2718.104(1)(iv); outdoor advertising de-

vices in areas zoned commercial or industrial along the interstate system and lying within the boundaries of any incorporated municipality as such boundaries existed on September 21, 1959, and devices located in any other area which, as of September 21, 1959, was clearly established by law as industrial or commercial, 36 P.S. § 2718.104(1)(v); and, outdoor advertising devices in zoned or unzoned commercial or industrial areas along the primary system, 36 P.S. § 2718.104(1)(vi).

**5.** A nonconforming sign is defined in 67 Pa. Code § 445.2 as a sign which was legally erected but which does not conform to the requirements of the Act.

**6.** Pursuant to Section 7 of the Act, 36 P.S. § 2718.107, an annual permit is required for each outdoor advertising device regulated by the Act.

grandfathering of a sign based simply on its message. As pointed out by DOT, the United States Supreme Court, in *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), held that a municipality may reasonably distinguish between onsite and offsite advertising on same property. Kasha also argues that pursuant to 23 C.F.R. § 750.707(d)(5), a change in message on a grandfathered sign has no effect on its grandfather status. The provisions of 23 C.F.R. § 750.707 pertain to nonconforming signs and "do not apply to conforming signs regardless of when or where they are erected." 23 C.F.R. § 750.707(a). As found by the hearing officer, the subject sign, prior to 1998, was "not nonconforming." Therefore, 23 C.F.R. § 750.707 does not apply.

■ Kasha next argues that the property on which the sign is located is commercial for purposes of the Act. Section 4(1)(v) of the Act, permits outdoor advertising devices "in areas zoned commercial or industrial along the interstate system and lying within the boundaries of any incorporated municipality as such boundaries existed on September 21, 1959, and devices located in any other area which, as of September 21, 1959, was clearly established by law as industrial or commercial." In *Patrick Media Group,* our Supreme Court held that a township does not qualify as a municipality for purposes of the Act. Thus, for the sign to be permitted under Section 4(1)(v), it must have been "located in any other area which, as of September 21, 1959, was clearly established by law as industrial or commercial." [7]

Section 6 of the Act, 36 P.S. § 2718.106, authorizes DOT to promulgate rules and regulations governing outdoor advertising. Pursuant to this authorization, regulations governing outdoor advertising are set forth in Title 67 of the Pennsylvania Code, Chapter 445. *Miller's Smorgasbord v. Department of Transportation,* 139 Pa. Cmwlth. 385, 590 A.2d 854 (1991). In 67 Pa.Code § 445.2, an area clearly established by law as industrial or commercial is defined as a "zoned commercial or industrial area." Kasha contends that to define the phrase "clearly established by law as industrial or commercial" as a zoned commercial or industrial area is to give no meaning to the statute. Kasha argues that, if the phrase "clearly established by law as industrial or commercial" meant zoned, the legislature would have so provided.

■ In general, a regulation promulgated by a state agency is presumed valid unless there has been a clear abuse of discretion. *Allegheny County Institution District v. Department of Public Welfare,* 668 A.2d 252 (Pa.Cmwlth.1995), *petition for allowance of appeal denied,* 547 Pa. 757, 692 A.2d 567 (1997). "'[I]t is not enough that the prescribed system of accounts shall appear to be unwise or burdensome or inferior to another. Error or unwisdom is not equivalent to abuse.'" *Uniontown Area School District v. Pennsylvania Human Relations Commission,* 455 Pa. 52, 77, 313 A.2d 156, 169 (1973) (quoting *American Telephone & Telegraph Co. v. United States,* 299 U.S. 232, 57 S.Ct. 170, 81 L.Ed. 142 (1936)). Kasha has not proven that DOT abused its discretion in defining an area clearly established by law as industrial or commercial as a "zoned commercial or industrial area."

**7.** Evidence offered by Kasha at the hearing indicated that the property was zoned commercial in April of 1972, but there was no evidence that it was zoned as such prior to that date.

■ Finally, Kasha argues that DOT failed to produce evidence that the sign was abandoned. Kasha contends that the changes to the subject sign were merely cosmetic in order to make the sign more aesthetically pleasing. Kasha further contends that the sign remained essentially the same size, the lighting existed prior to the change of advertisement and the sign continued to utilize wooden poles.

An abandoned sign is defined, *inter alia*, in 67 Pa.Code § 445.8(b)(2), as "[a] sign other than a nonconforming sign which requires maintenance or repair in excess of 25% of the replacement cost of the sign." The regulation further provides that "[d]etermination of the replacement cost of the sign and of the amount of required maintenance or repair shall be made by the Department after consultation with the sign owner." *Id.*

The regulations at 67 Pa.Code § 445.8(b)(2) require that the determination of the replacement cost of the sign, or the amount of required maintenance or repair, be made by DOT *after consultation with the sign owner.* As the hearing officer stated, Kasha did not provide any repair invoices or billings and Kasha does not challenge this statement. Thus, DOT was unable to make a determination required by 67 Pa.Code § 445.8(b)(2).

The hearing officer noted, however, that the cumulative evidence indicated that the subject sign was substantially reconstructed and that there was no evidence introduced that any or all of the sign's replacement parts were composed of any parts of the old sign. The hearing officer did not err in concluding that the replacement of the subject sign in the manner described constituted abandonment where Kasha failed to present the evidence of the cost of repair in his control.

The order of the Secretary is affirmed.

*ORDER*

AND NOW, this 2nd day of August, 2001 the order of the Secretary of the Department of Transportation in the above-captioned matter is hereby affirmed.

Judge LEADBETTER concurs in result only.